IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CREIGHTON PROPERTY HOLDINGS,
LLC,

*Plaintiff,*

v.

LEWIS BROTHERS, INC.,

*Defendant.*

Civil Action No. 2:21-cv-279

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

### I.   INTRODUCTION

Pennsylvania courts have adopted the "gist of the action" doctrine which bars a party from maintaining a tort claim where the true "gist" of the party's cause of action alleges the failure to satisfy duties established and governed by the terms of a contract.  Plaintiff, Creighton Property Holdings, LLC ("Creighton"), filed a three-count Complaint asserting two claims for breach of contract (Counts I and III) and a claim of negligence (Count II).  (ECF No. 1).  Defendant, Lewis Brothers, Inc. ("Lewis Bros."), moved for the dismissal of Creighton's negligence claim (Count II) under Federal Rule of Civil Procedure ("Rule") 12(b)(6) based on Pennsylvania's "gist of the action" doctrine.  Lewis Bros. claims that Creighton's negligence count merely recasts its breach of contract claims as a tort claim.  Lewis Bros. also moves to dismiss the requests for punitive damages in Creighton's breach of contract claims because Pennsylvania law does not permit the recovery of punitive damages for a breach of contract.  The law supports Lewis Bros.'s position

on both points.  Therefore, the Court will grant Lewis Bros.'s Motion to Dismiss in Part.  (ECF No. 7).

## II.   FACTUAL BACKGROUND

In 2019, Creighton bought the former PPG Glass Works property located at 150 Ferry Street in East Deer Township, Pennsylvania, and planned to develop it into a brewery.  (*Id.* ¶¶ 1, 2, 19).  Lewis Bros. is a demolition and disposal services company for industrial properties. Creighton and Lewis Bros. entered into a Disposal Services Agreement ("Agreement") to have Lewis Bros. deconstruct, remove and dispose of certain buildings, equipment, material and debris on the property.  (*Id.* ¶¶ 1–5, 20); (ECF No. 1-1).  The Agreement specifically identified the buildings and materials that were to be deconstructed and removed, as well as those that were to be preserved.  (ECF No. 1, ¶ 26).

Under the Agreement, Lewis Bros. promised "to perform the removal and disposal services at the [property] in accordance with generally accepted demolition and disposal practices and procedures in the industry."  (*Id.* ¶¶ 22, 24); *see also* (ECF No. 1-1) (Lewis Bros. agreed to "perform the Services in accordance with industry standards and generally accepted practices and procedures").  Lewis Bros. also arranged to "provide all necessary labor, materials and equipment" and to "deconstruct, remove and dispose of the particular buildings, equipment, materials and debris from the [property]" as described in the Scope of Work and map.  (ECF No. 1, ¶ 23); (ECF No. 1-1).

Creighton and Lewis Bros. outlined the scope of the job during a joint inspection of the property.  (ECF No. 1, ¶¶ 25, 29).  During the inspection, representatives of Creighton delineated areas within and outside the scope of the work.  (*Id.* ¶ 34).  The finalized Agreement stated that Lewis Bros. would:

> [d]econstruct, remove and dispose of the two (2) autoclaves and such other production equipment associated with the former glass production operations from the undamaged buildings as is marked by [Creighton] in advance of [Lewis Bros.] commencing the Services.  No equipment or materials that are 1) related to the boiler system, 2) related to the electrical system, 3) related to the air compressors or compressed air system, or 4) not marked for removal by [Creighton] may be removed from the undamaged buildings.

(ECF No. 1, ¶ 26); (ECF No. 1-1).  Lewis Bros. also agreed to "coordinate removal of the Materials as not to disturb the electrical, gas, water, sewer, and other utility lines presently in place at the [property]."  (ECF No. 1, ¶ 27); (ECF No. 1-1).

The Agreement required Lewis Bros. to:

> defend, indemnify, and hold harmless [Creighton] . . . against any and all liability, suits, losses, demands, causes of action, fines, penalties, damages, and claims of any kind or nature, including reasonable attorney's fees, and costs . . . caused by, arising out of, or in any manner connected with [Lewis Bros.'s] . . . acts, omissions, performance or nonperformance under this Agreement.

(*Id.* ¶ 35).

Lewis Bros. further agreed to pay Creighton for materials it would salvage.  The parties outlined in their Agreement that Lewis Bros.:

> [i]n consideration for [its] Services and the payment of $150,000.00 to [Creighton] by [Lewis Bros.], [Lewis Bros.] will gain ownership of the Materials identified by [Creighton] and dismantled and removed by [Lewis Bros.].  Payment will be made in four equal payments of $37,500.  The first payment shall be due 14 days after [Lewis Bros.'s] Services begin.  Subsequent payments of $37,500.00 shall be due every 30 days thereafter.

(ECF No. 1-1, p. 3).

Lewis Bros. later removed portions of the building, including electrical equipment, that were not designated for removal by the Agreement. Creighton alleges that this caused over $500,000 in damages.  (*Id.* ¶¶ 37–39).  Further, although Lewis Bros. removed salvage material, it failed to pay the $150,000 as  required by the Agreement.  (*Id.* ¶ 9).  Creighton notified Lewis Bros. that it was in default under the Agreement and demanded reimbursement.  (*Id.* ¶¶ 43–46).

Lewis Bros. did not reimburse Creighton leading Creighton to terminate the Agreement. (*Id.* ¶¶ 47–48). Creighton retained the services of another contractor to complete the demolition work. (*Id.* ¶ 11). Creighton brought this action to recover for damages caused by Lewis Bros.'s actions.

**III.   ANALYSIS**

### A.   Creighton's negligence claim (Count II) is duplicative of its breach of contract action and is barred by the "gist of the action" doctrine.

Lewis Bros. moves for the dismissal of Creighton's claim of negligence in Count II under Pennsylvania's "gist of the action" doctrine. Lewis Bros. also moves for the dismissal of Creighton's claims for punitive damages in Counts I and III. Lewis Bros. argues that Creighton's negligence claim is really a re-cast of its breach of contract claims and that all facts pled establish that any duties alleged to have been breached were created by and grounded in the parties' Agreement, rather than broader social obligations sounding in tort.

The "gist of the action" doctrine precludes a plaintiff from pursuing a tort claim that arises out of the contractual obligations of the parties. The Pennsylvania Supreme Court provided a magisterial examination of the doctrine in *Bruno v. Erie Insurance Co.*, 106 A.3d 48 (Pa. 2014). In *Bruno*, the Pennsylvania Supreme Court explained that the historic origin of the doctrine stems from the common-law distinction between actions proceeding on a writ of assumpsit and those on a writ of trespass. The Pennsylvania Supreme Court explained that even after the distinction between the writ-based forms of action was alleviated, Pennsylvania courts generally maintained a sharp distinction between claims that arise out of the obligations in parties' contracts and those imposed as a matter of general social duty. Parties are not permitted to recast in tort what is actually a claim under their contract. Thus, if the "gist" of an action sounds in contract, a tort claim may not be asserted on the same occurrence and transaction.

The Pennsylvania Supreme Court explained that a determination of whether an action is properly lodged as a claim in tort or contract depends on the nature of the duty breached as set forth in the complaint:

> The general governing principle which can be derived from our prior cases is that our Court has consistently regarded the nature of the duty alleged to have been breached as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract.  In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g. for negligence, is not controlling.  If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract— i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract.  If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Id.* at 68 (internal citations omitted); *see also Dommel Prop. LLC v. Jonestown Bank & Tr. Co.*, 626 F. App'x 361, 364 (3d Cir. 2015) ("The gist of the action doctrine precludes tort claims where the true gravamen, or gist, of the claim sounds in contract.").

The "gist of the action" doctrine bars a tort claim that "essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of the contract." *eToll, Inc. v. Elias/Savion Advert., Inc.*, 811 A.2d 10, 19 (Pa. Super. 2002) (quotation omitted).  "To evaluate whether the gist of the action doctrine applies, a court must identify the duty breached, because the nature of the duty alleged to have been breached . . . [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract." *Downs v. Andrews*, 639 F. App'x 816, 819 (3d Cir. 2016) (quoting *Bruno*, 106 A.3d at 68).  Although predating *Bruno*'s comprehensive exploration of the "gist of the action" doctrine, a decision of the

United States District Court for the Eastern District of Pennsylvania provided an accurate analysis under Pennsylvania law where a tort claim will be barred by the "gist of the action" doctrine:

> The doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 619-20 (E.D. Pa. 2010).

Creighton's negligence claim cannot stand in light of the "gist of the action" doctrine because it cannot be separated from the parties' contractual relationship. It alleges that "Lewis Brothers owed a duty and obligation to Creighton to act within generally accepted demolition and disposal practice and procedures in the industry and to *not* damage equipment at the Property, including the Substation Equipment and the other electrical conduit." (ECF No. 1, ¶ 61). Moreover, it alleged that "Lewis Brothers breached this duty when it negligently, recklessly, and wantonly destroyed materials at the Property **outside the Services to be rendered under the Agreement**, including the Substation Equipment and other electrical conduit, **flagrantly ignoring the plain language of the Agreement** and unequivocal instructions from representatives of Creighton." (*Id.* ¶ 62) (emphasis added). These allegations, the language of the parties' Agreement and the factual recitation set forth in the Complaint lead to the unavoidable conclusion that Creighton's negligence claim arises solely from the parties' contract, that the duties allegedly breached were created and grounded in the contract, and that the liability stems from the contract and is duplicative of the breach of contract claim.

Creighton hired Lewis Bros. for demolition and deconstruction of its facilities, and their Agreement—specifically the Scope of Work attached at Exhibit 1 thereto—outlined which portions of the building were meant to be preserved and which portions were meant to be

demolished.  (ECF No. 1, pp. 12-13).  The Agreement created an affirmative duty that expressly prohibited Lewis Bros. from removing or disturbing systems and property not subject to the Agreement.  (*Id.*) ("No equipment or materials that are 1) related to the boiler system, 2) related to the electrical system, 3) related to the air compressors or the compressed air system, or 4) not marked for removal by CPH may be removed from the undamaged buildings.").  Lewis Bros.'s failure to adhere to the requirements of the Agreement is the gist of Creighton's negligence claim as well as its breach of contract claim.

Creighton counters that Lewis Bros. has violated some wider social duty apart from the Agreement, but it has failed to plausibly identify any general societal duty Lewis Bros. owed it beyond the duties imposed by the Agreement.  But for their Agreement, Lewis Bros. would have no duty to Creighton.  All duties named by Creighton are duties explicitly part of the Agreement and not collateral to the parties' relationship and interaction.  Creighton has pled no facts suggesting that the damage to its property was caused by a breach of a collateral duty.  The claims duplicate Creighton's breach of contract claims and rely on identical factual allegations.

Creighton argues that even in light of its agreement with Lewis Bros., a negligence claim may arise from Lewis Bros.'s breach of the social obligation to perform its tasks in a reasonable (i.e., non-negligent) manner.  However, failure to perform contractual duties in a workmanlike manner will not give rise to a separate tort claim alongside a breach of contract claim—the remedy is an action on the contract.  This was well-illustrated by this Court in *Insurance Company of Greater N.Y. v. Fire Fighter Sales and Service Company*, 312 F.R.D. 394 (W.D. Pa. 2015) (Conti, C.J.).  In that case, the insurer was the subrogee of a hotel owner and brought claims for breach of contract and negligence arising out of the defendant's installation of a sprinkler system at the hotel. Judge Conti granted summary judgment on the defendant's negligence claim, holding that the

7

claim sounded in contract and was, therefore, barred by the "gist of the action" doctrine.  Shortly

thereafter, the Pennsylvania Supreme Court decided *Bruno* and the plaintiff sought relief from the

judgment, arguing—as does Creighton here—that *Bruno* could be read broadly to permit the co-

existence of its claim for breach of contract along with that for negligence arising in the context of

contractual performance.  The Court rejected that interpretation:

> In the instant case, plaintiff did not allege defendant was negligent for acts or
> omissions occurring apart from—but during the course of fulfilling (i.e.,
> satisfying)—its contractual obligation, as contemplated in *Bruno*.  Plaintiff's
> argument was that defendant was negligent *because it did not fulfill its contractual
> obligation* to design, build, and install an effective, functioning sprinkler system in
> the Hotel.  Plaintiff's argument, therefore, went beyond the narrow holding in
> *Bruno*.  Under plaintiff's broad reading of *Bruno*, negligent performance of a duty
> defined by a contract would create a cause of action for negligence *and* breach of
> contract in every instance, thus eviscerating the "gist of the action" doctrine's
> purpose to "maintain the conceptual distinction between breach of contract claims
> and tort claims."

*Ins. Co. of Greater N.Y.*, 312 F.R.D. at 406 (internal citation omitted).  This reasoning applies

with equal force to Creighton's arguments here.  Creighton's assertion of negligence on Lewis

Bros.'s part relates solely to its actions in undertaking the work governed by the parties'

Agreement.  Its failure to perform its duties in the manner promised sounds only in contract—not

in tort.  Creighton's remedy must, likewise, sound in contract.[1]

---

[1] Creighton cited to various cases for the proposition that a party may bring a tort claim with a
breach of contract claim, and relating to performance under the contract, that will not be barred by
the "gist of the action" doctrine.  *See, e.g.*, *Hawthorne v. Dravo Corp.*, 460 A.2d 266, 269 (Pa.
Super. 1983) (reversing the trial court finding that the defendant had a duty unconnected with its
contract to exercise reasonable care in conducting dredging activities to avoid subjecting persons
who were not parties to the contract to unreasonable harm); *St. Paul Fire & Marine Ins. Co. v.
Nolen Grp., Inc.*, No. CIV.A. 02-8601, 2007 WL 2571524, at *13 (E.D. Pa. Aug. 31, 2007)
(contractor had a common law duty to act non-negligently to third parties); *Bloomsburg Mills, Inc.
v. Sordoni Constr. Co.*, 164 A.2d 201, 203 (Pa. 1960) (architect liable for negligently submitting
plans for a roof and finding that an architect is bound to "use reasonable and ordinary care and
diligence in the application of his professional knowledge to accomplish the purpose for which he
is retained"); *Zell v. Arnold*, 2 Pen. & W. 292, 1830 WL 3261 (Pa. 1830) (finding that a defendant
was bound to perform in a "workmanly manner").  These cases are readily distinguishable.  In

Creighton also argued that it is premature to decide whether its negligence claim is barred by the "gist of the action" doctrine and that it should be permitted to create a fuller record in discovery. Courts have cautioned against dismissal based on the "gist of the action" before discovery is conducted. *See Addie v. Kjaer*, 737 F.3d 854, 868 (3d Cir. 2013) (noting that applying the doctrine generally involves a fact-intensive undertaking by a court). This is not, however, an inflexible position, and there is no question that where, as pled, a tort claim cannot be separated from the parties' contractual relationship, the Court need not permit discovery on a futile claim. Moreover, an examination of the caselaw where courts deny a motion to dismiss shows that in many, if not most, cases, the tort that was pled was one of misrepresentation (fraud in the inducement) which does not relate to performance of the contract, but to its formation. *See, e.g., Little Souls, Inc. v. State Auto Mut. Ins. Co.*, No. 03-5722, 2004 WL 503538, at *2–3 (E.D. Pa. Mar. 15, 2004) (denying a motion to dismiss where plaintiff alleged "misrepresentations occurred both before and after the formation of the contract"). There is no question that courts have granted motions to dismiss based on the "gist of the action" doctrine where the claims relate to the performance of the contract, even where the tort claim was presented as one for fraud. *See Caudill Seed & Warehouse Co. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 834 (E.D. Pa. 2000) (the court recognized that although "caution should be exercised in determining the gist of an action at the motion to dismiss stage," it still dismissed the claim because "the agreement [was] at the heart of plaintiff's ongoing fraud claim . . . ."); *Galdieri v. Monsanto Co.*, 245 F. Supp. 2d 636, 651 (E.D.

---

*Hawthorne*, the Pennsylvania Superior Court allowed a tort claim because the claims involved the death of a person not a party to the contract. 460 A.2d at 271. Similarly, in *St. Paul Fire & Marine Ins. Co.*, the district court found that the contractor owed a duty to act without negligence toward third parties. 2007 WL 2571524, at *27. The other two cases, *Bloomsburg Mills* and *Zell*, were decided well before the Pennsylvania Supreme Court's decision in *Bruno* while Pennsylvania Courts were still exploring the conceptual underpinnings of what ultimately became the "gist of the action" doctrine.

Pa. 2002) (barring fraud claims under the "gist of the action" doctrine because the fraud claims were "intertwined" with breach of contract claims).

In this case, the only allegations supporting Creighton's negligence claim relate to the performance under the contract, not its formation.  Discovery in this case is not reasonably likely to demonstrate that the claim—as pled—stems from duties outside the bounds of the parties' Agreement.  As such, the Court is able to determine at this time that Creighton's negligence claim fails due to the "gist of the action" doctrine and will be dismissed.

**B.**     **Creighton's claim for punitive damages on its breach of contract claims (Counts I and III) will be dismissed.**

Lewis Bros. requests dismissal of Creighton's demand for punitive damages in its breach of contract claims at Counts I and III.  Pennsylvania law is clear that punitive damages are generally not recoverable in a breach of contract claim.  *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 147 (3d Cir. 2000) ("The law of Pennsylvania clearly provides, however, that punitive damages are not recoverable in an action solely based upon [a] breach of contract." (citing *Johnson v. Hyundai Motor Am.*, 698 A.2d 631, 639 (Pa. Super. 1997)); *see also Daniel Adams Assoc., Inc. v. Rimbach Pub. Inc.*, 429 A.2d 726, 728 (Pa. Super. 1981) ("[P]unitive damages will not be assessed for a breach of mere contractual duties.  Only where the person who breaks a contract also breaches some duty imposed by society will compensatory or punitive damages be imposed against the wrongdoer in order to punish the wrongful act and in order to serve as a deterrent."); *Western Essex Corp. v. Casio, Inc.*, 674 F. Supp. 8, 9 (W.D. Pa. 1987) ("In Pennsylvania, punitive damages are ordinarily not recoverable on breach of contract claims.  It is only where the defendant's conduct gives rise to an *independent* tort claim that punitive damages may be available.").  Here, as explained above, Creighton has not pled an independent tort claim.  Rather, the only tenable claim

it asserts is one for breach of contract.  As such, Pennsylvania law will not permit a request for punitive damages.[2]

###    C.    Creighton will not be permitted to amend to add a claim for conversion.

In its opposition to the dismissal of its request for punitive damages, Creighton requests that if the Court would be inclined to grant Lewis Bros.'s motion, Creighton be granted leave to amend its complaint to include the tort claim of conversion—thus providing an independent tort upon which it could base a punitive damages claim.  (ECF No. 12, pp. 19, n. 13) ("If the Court is inclined to dismiss Creighton's request for punitive damages in Count III, Creighton requests leave to amend the Complaint to assert a conversion claim.").  Creighton claims that while it "has not asserted a claim for conversion in the Complaint, Pennsylvania law and the allegations in the Complaint nevertheless support one."  Lewis Bros. counters that the proposed tort of conversion based on allegations that Lewis Bros. did not pay Creighton the contractually agreed upon monetary consideration for salvaged materials is also barred by the "gist of the action" doctrine.

The Court agrees with Lewis Bros. and will not give leave to Creighton to add a conversion claim.  Such an amendment would be futile because it, too, would be barred by the "gist of the action" doctrine.  The parties outlined in their Agreement that Lewis Bros.:

---

[2] Creighton relies heavily on the unpublished decision of the United States District Court for the Middle District of Pennsylvania in *Cerreta v. Red Roof Inns, Inc.*, 2016 WL 4611689 (M.D. Pa. 2016), to argue that a punitive damages claim can proceed with a claim for breach of contract. But the facts of that case are very different from the facts alleged here.  There, the district court declined to dismiss a claim for punitive damages related to tort claims alongside the breach of contract claims.  2016 WL 4611689, at *3 (recognizing that the traditional bar on punitive damages in breach of contract claims is inapplicable when "the breach of contract also amounts to a recognized tort").  In that case, guests checked into a hotel room that the owners knew had bedbugs. *Id.* at *2.  Their claims of negligent infliction of emotional distress were different from their breach of contract claims and were permitted to proceed.  Thus, in *Cerreta*, there was an independent tort asserted that would permit the plaintiffs' generalized request for punitive damages to survive.  Here, Creighton's negligence claim cannot survive scrutiny under the "gist of the action" doctrine.  Absent an independent tort, the claims for punitive damages cannot stand.

> [i]n consideration for [its] Services and the payment of $150,000.00 to [Creighton] by [Lewis Bros.], [Lewis Bros.] will gain ownership of the Materials identified by [Creighton] and dismantled and removed by [Lewis Bros.]. Payment will be made in four equal payments of $37,500. The first payment shall be due 14 days after [Lewis Bros.'s] Services begin. Subsequent payments of $37,500.00 shall be due every 30 days thereafter.

(ECF No. 1-1, p. 3). As the Agreement outlines the specific duties required by the parties, Creighton appropriately brought a breach of contract claim. Creighton has alleged no collateral duties or duties apart from the Agreement. Any conversion claim would be inextricably intertwined with the non-payment of the agreed-upon amount for material that Lewis Bros. took pursuant to the terms of the Agreement. The Court finds that the "gist of the action" doctrine would bar any claim for conversion relating to the non-payment for material taken from the subject property. Although amendment is to be liberally granted under Rule 15, a district court need not give leave to make a futile amendment. Leave will not be granted here.

## IV.  CONCLUSION

For these reasons, Lewis Bros.'s Motion to Dismiss in Part under Federal Rule of Civil Procedure 12(b)(6) will be granted. (ECF No. 7). An Order of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

10- 4- 21
Dated

12